Case 5:24-cr-00984   Document 49   Filed on 11/22/24 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
November 22, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:24-cr-984 |
| | § | |
| REYNALDO RENE HERRERA, III | § | |

**ORDER**

Before the Court are Defendant's Motion to Suppress Search Warrant (Dkt. No. 28) and the Government's response (Dkt. No. 31). Defendant seeks to suppress a warrant that authorized a search of his residence, and the evidence obtained from the search (Dkt. No. 28 at 1). After holding a suppression hearing (Min. Ent. Nov. 6, 2024) and carefully considering the briefing, the record, and applicable authorities, the Court **DENIES** Defendant's motion (Dkt. No. 28).

I.   **BACKGROUND**[1]

On February 8, 2024, a confidential informant contacted Texas Department of Public Safety ("DPS") Special Agent Johnhenry Bradshaw with a tip that Defendant was selling illegal narcotics out of his residence at 1009 Chaparral Street, Laredo, Texas 78041 (Dkt. No. 46 at 8). Agent Bradshaw acted immediately on the tip, beginning to surveil Defendant's residence the same day (Dkt. No. 46 at 8). He observed "multiple vehicles arriving and leaving the said residence in a short period of time," which he considered from his training and experience to be consistent with drug dealing (Dkt. No. 46 at 8).

---

[1] The following factual background is taken from DPS Special Agent Bradshaw's Affidavit for Search Warrant in this case (Dkt. No. 46 at 5–11).

1

On February 19, 2024, Agent Bradshaw performed a trash pull on Defendant's residence, collecting ten items (Dkt. No. 46 at 8). The items included: small and large plastic baggies, one of which was imprinted with the words "CVSHealth" and a heart symbol; two disassembled pens; and a generic brown pill bottle labeled "Alprazolam," which is commonly prescribed as Xanax (Dkt. No. 46 at 8). Agent Bradshaw believed the disassembled pens could have been used as pipes for smoking narcotics (Dkt. No. 46 at 8). He also observed what looked and smelled like a marijuana stem in one of the baggies (Dkt. No. 46 at 8).

On February 21, 2024, DPS Special Agent Eric Wright tested the items from the trash pull with an MX908 portable mass spectrometer device, which can be used to detect the presence of drugs (Dkt. No. 46 at 8; Hr'g Nov. 6, 2024 ("Hr'g"), at 9:58:40–9:59:00). The MX908 device gave positive results for fentanyl, methamphetamine, and cocaine (Dkt. No. 46 at 8). Notably, the test results printout stated that the last system check on the device was a "fail" (Dkt. No. 46 at 14–54).

On February 22, 2024, shortly after midnight, a DPS Highway Patrol Trooper stopped a car after it departed Defendant's house (Dkt. No. 46 at 9). As the trooper initiated the stop, the driver of the car threw a paper towel out of the window (Dkt. No. 46 at 9). The trooper retrieved the paper towel, which contained pills and a small plastic baggie with a white powdery substance (Dkt. No. 46 at 9). A field test confirmed that the powder was cocaine (Dkt. No. 46 at 9). In addition, after being read his *Miranda* rights, the driver admitted that the powder was cocaine and the

pills were Xanax (Dkt. No. 46 at 9). The baggie bore the same imprint of "CVSHealth" with a heart symbol as the baggie from the trash pull (Dkt. No. 46 at 9).

From 9:00 p.m. on February 22, 2024, until 1:00 a.m. on February 23, 2024, Agent Bradshaw conducted further surveillance on Defendant's residence (Dkt. No. 46 at 9). He again observed multiple vehicles arriving and leaving the house for short periods (Dkt. No. 46 at 9).

Based on the above evidence, on February 23, 2024, Agent Bradshaw applied to Webb County Magistrate Judge David E. Garcia for a warrant authorizing a search of Defendant's residence (Dkt. No. 46 at 10–11). He filed an affidavit in which he swore to the above facts (Dkt. No. 46 at 5–10). Judge Garcia signed a warrant authorizing a search of the residence for items related to suspected controlled substance offenses (Dkt. No. 46 at 1–2). Law enforcement executed the warrant on the same date and seized illegal drugs and other items from Defendant's residence (Dkt. No. 28 at 4).

In his motion, Defendant does not challenge the execution of the warrant, but rather argues that Agent Bradshaw's affidavit: (i) included statements that were either false or recklessly disregarded the truth; and (ii) was too "bare bones" to support a finding of probable cause (Dkt. No. 28 at 7–8) (citing first *Illinois v. Gates*, 462 U.S. 213 (1983); then citing *Franks v. Delaware*, 438 U.S. 154 (1978)). The Government timely responded to Defendant's motion (Dkt. No. 31). On November 6, 2024, the Court held a suppression hearing and took the matter under advisement (Min. Ent. Nov. 6, 2024). The motion is now ripe for the Court's consideration.

## II.     LEGAL STANDARDS

"The Fourth Amendment guarantees individuals the right 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Smith*, 110 F.4th 817, 830 (5th Cir. 2024) (quoting U.S. Const. amend. IV). "To be deemed reasonable, a search generally must be supported by a warrant issued upon probable cause." *United Transp. Union v. Foster*, 205 F.3d 851, 858 n.12 (5th Cir. 2000) (citing *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989)). "Probable cause for a search warrant exists if 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found' at the location to be searched." *United States v. Locket*, No. CR H-22-072, 2023 WL 5153549, at *2 (S.D. Tex. Aug. 10, 2023) (ellipses in original) (quoting *Gates*, 462 U.S. at 238). If evidence is unconstitutionally obtained, it is subject to suppression. *Smith*, 110 F.4th at 830 (citing *Hudson v. Michigan*, 547 U.S. 586, 590 (2006)).

Where a defendant challenges a search authorized pursuant to a warrant, he bears the burden of proving by a preponderance of the evidence that the search violated his constitutional rights. *United States v. Robins*, No. CR 18-83-BAJ-EWD, 2019 WL 1925103, at *1 (M.D. La. Apr. 29, 2019) (quoting *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39 (cleaned up) (quoting *Jones v. United States*,

362 U.S. 257, 271 (1960), *overruled in part by United States v. Salvucci*, 448 U.S. 83 (1980)).

The Fifth Circuit applies "a two-step test when determining whether to suppress evidence obtained under a warrant." *United States v. Jackson*, No. 20-30778, 2022 WL 1548669, at *3 (5th Cir. May 16, 2022). The court first asks, "whether the good faith exception to the rule applies," and then inquires "whether the warrant was supported by probable cause." *Id.* (quoting *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014)). "If the good-faith exception applies, [the court] need not reach the question of probable cause." *Id.* (citing *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)).

## III. DISCUSSION

### A. Applicability of the Good-Faith Exception

Under the good-faith exception to the Fourth Amendment's exclusionary rule, evidence obtained pursuant to a warrant need not be suppressed where officers reasonably relied on the warrant, even if it was later found to be invalid. *Cherna*, 184 F.3d at 407 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). "Courts generally presume that officers executing search warrants do so with reasonable objectivity." *United States v. Gonzalez*, No. 5:18-CR-482, 2018 WL 6174202, at *2 (S.D. Tex. Nov. 7, 2018) (citing *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006)), *report and recommendation adopted*, No. 5:18-CR-482, 2018 WL 6173724 (S.D. Tex. Nov. 26, 2018) (Garcia Marmolejo, J.). However, there are four circumstances where the good-faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false;
> (2) when the issuing magistrate wholly abandoned his judicial role;
> (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and
> (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*Smith*, 110 F.4th at 838–39 (citing *United States v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013)). The defendant must demonstrate by a preponderance of the evidence that the good-faith exception is inapplicable. *United States v. McGaffey*, 587 F. Supp. 3d 550, 554 (E.D. Tex. 2021) (citing *United States v. Rosa*, 721 F. App'x 403 (5th Cir. 2018)).

Defendant does not allege that the issuing magistrate wholly abandoned his judicial role or that the warrant was facially deficient by falling short of particularity requirements (*see* Dkt. No. 28 at 7–8). Rather, his arguments center on the first and third circumstances in which the good-faith exception does not apply. He argues that Agent Bradshaw misled Judge Garcia with statements that were materially false or demonstrated a reckless disregard for the truth, and that the affidavit was too "bare bones" to provide a basis for probable cause on the warrant (Dkt. No. 28 at 7–8). The Court treats each argument in turn and finds that both fail to get off the ground.

(1) <u>Alleged False Statements in Warrant Application</u>

Defendant, citing *Franks v. Delaware*, argues that false statements in the affidavit should be excluded from the probable cause determination, and that once the statements are excluded, probable cause on the warrant is otherwise lacking (Dkt. No. 28 at 7–8). His contention centers on Agent Bradshaw's statement in the affidavit

6

that there were "positive hits" on items from the trash pull (Dkt. Nos. 28 at 7–8; 46 at 8). He argues this assertion was materially false or recklessly disregarded the truth because the "actual results of the field [test] show that the testing of the system was a 'fail'" (Dkt. No. 28 at 8).

"Pursuant to *Franks v. Delaware* . . . even if an independent magistrate judge approves a warrant application, a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause." *Reitz v. Woods*, 85 F.4th 780, 793 (5th Cir. 2023) (internal quotation marks and citation omitted). "Although the *Franks* inquiry is often described as two prongs, the inquiry effectively consists of three questions, all of which must be met." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citations omitted). The three questions are:

- First, does the affidavit contain a false statement?
- Second, was the false statement made intentionally or with reckless disregard for the truth?
- And third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause?

*Id.* (citations omitted). First, the Court finds that the affidavit does not contain a false statement. True, the printout of the MX908 drug test shows that the last system check on the device was a fail (*see* Dkt. No. 46 at 14–54). But the printout also shows that the MX908 device positively alerted to the presence of fentanyl, methamphetamine, and cocaine (*see* Dkt. No. 46 at 14, 17, 20, 23, 24, 27, 30, 33, 36, 37, 40, 43, 46, 49, 52). The system check and the drug testing are two different

7

procedures; the system check is performed prior to any drug testing (Hr'g at 9:59:30–10:00:14). Therefore, Agent Bradshaw's statement that the trash pull items tested positive for illegal narcotics was neither false nor even misleading. Additionally, the MX908 printout was attached to his application for a search warrant, so Judge Garcia was provided with the information that the last system check had failed, even if Agent Bradshaw did not address that fact head-on in his affidavit.

At the suppression hearing, the Government called to the stand DPS Special Agent Eric Wright, who conducted the MX908 test (Dkt. No. 44). Agent Wright testified that he was trained and certified to use the MX908 device on November 29, 2023 (Hr'g at 9:38:19–9:38:33). He testified that human error caused the failure report (Hr'g at 9:43:35–9:44:30).

Specifically, it was Agent Wright's first time using the device since his training, and he failed to hold a device component in place for long enough for the machine to complete the system check process (Hr'g at 9:43:44–9:44:15). He reached out to the Laredo Police Department because officers there had more experience with the device (Hr'g at 9:44:15–9:44:21). One of the Laredo Police Department testers instructed Agent Wright that if he held the component in place for longer, the machine would function correctly (Hr'g at 9:44:21–9:44:30). Once Agent Wright adopted this advice, the device indicated it was ready to test (Hr'g at 9:44:34–9:44:43). Agent Wright did not think his user error would affect the machine's operation and, to his knowledge, the device was operable when he tested the items from the trash pull (Hr'g at 9:44:44–9:45:00).

8

The Government also called as a witness Stephen Mills, who serves as Director of Customer Success and Training at 908 Devices (Dkt. No. 44). Director Mills was provided with reachback data concerning the system check of the MX908 device used to test the trash pull items (Hr'g at 10:01:19–10:01:27).[2] He testified that the data revealed a system check was employed, but the machine failed because the operator did not proceed in a timely manner (Hr'g at 10:01:37–10:02:13). However, the data demonstrated that the device was operating within normal parameters and the "fail" message on the printout report was due to the system check timing out, not because of any problem with the device's performance (Hr'g at 10:02:13–10:02:38, 10:06:26–10:07:03). According to Director Mills, Agent Wright's user error would not have affected the drug test results (Hr'g at 10:07:21–10:07:33). Director Mills reviewed the reachback data and determined that Agent Wright performed a successful system check despite the "fail" reading (Hr'g at 10:09:19–10:09:29).

Thus, there is no basis in the record to conclude that the drug testing device was functioning outside of normal parameters. So, Agent Bradshaw's statement in his affidavit that the device returned positive hits is not false or even undermined by the "fail" result in the printout. Nor, therefore, was this statement intentionally false or in reckless disregard of the truth. *See Ortega*, 854 F.3d at 826. Accordingly, Defendant has failed to demonstrate that the magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false. *See Smith*, 110 F.4th at 838–39 (citation omitted).

---

[2] Director Mills testified that reachback data is raw data the device provides regarding system malfunctions that can be reviewed for service and other purposes (Hr'g at 10:04:25–10:04:46).

9

(2) <u>Bare Bones Affidavit</u>

The good-faith exception to the exclusionary rule does not apply to a "bare bones" affidavit; "that is, an affidavit 'so deficient in demonstrating probable cause that it renders an officer's belief [in the existence of probable cause] completely unreasonable.'" *United States v. McGaughey*, 200 F. App'x 305, 306 (5th Cir. 2006) (alteration in original) (quoting *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997)). "Such an affidavit is based upon conclusory statements, and lacks facts and circumstances from which a magistrate can independently determine probable cause." *Id.* (internal quotation marks omitted) (citing *United States v. Pofahl*, 990 F.2d 1456, 1474 n.18 (5th Cir. 1993)). "For example, affidavits 'that merely state that the affiant "has cause to suspect and does believe" or "has received reliable information from a credible person and does believe" that contraband is located on the premises' are bare bones." *United States v. Huerra*, 884 F.3d 511, 515 (5th Cir. 2018) (quoting *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006)).

Defendant's allegation that the warrant affidavit had "no substance" and was "bare bones" is meritless (Dkt. No. 28 at 7). The affidavit included seven detailed paragraphs of evidence that Agent Bradshaw believed supported probable cause (Dkt. No. 46 at 8–9). It also described the residence to be searched, information about Defendant, particular items that law enforcement would look for, Agent Bradshaw's training and experience, and his general knowledge of drug trafficking and money laundering practices (Dkt. No. 46 at 5–11). His affidavit was thus not "bare bones" or

"so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 899.

Therefore, the officers were entitled to rely upon the warrant when they executed the search of Defendant's residence. It is Defendant's burden to establish by a preponderance of the evidence that the good-faith exception is inapplicable. *See McGaffey*, 587 F. Supp. 3d at 554 (citation omitted). Defendant has failed to meet his burden and the good-faith exception applies.

"Principles of judicial restraint and precedent dictate that, in most cases, [the court] should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter." *United States v. Beard*, No. 4:18-CR-00601, 2019 WL 2161038, at *7 (S.D. Tex. May 17, 2019) (ellipses in original) (quoting *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988)), *aff'd,* 16 F.4th 1115 (5th Cir. 2021). The Court finds that the good-faith exception applies here, and therefore **DENIES** Defendant's motion to suppress (Dkt. No. 28).

## IV.   CONCLUSION

Accordingly, Defendant's motion to suppress (Dkt. No. 28) is **DENIED**.

It is so **ORDERED**.

**SIGNED** November 22, 2024.

Marina Garcia Marmolejo
United States District Judge